IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL O'GRADY, an individual; ALLEN SMOOT, an individual; PRO-SURGICAL ASSOCIATES, LLC, a California Limited Liability Company;<br>    Plaintiffs,<br>   v.<br>CONMED CORPORATION, a corporation; LINVATEC CORPORATION, a corporation; ROB CHRISTENSEN, an individual;<br>    Defendants.<br>_____/ | No. C 13-5242 CW<br><br>ORDER REGARDING DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION TO REMAND (Docket Nos. 6, 18) |

On October 16, 2013, Plaintiffs Michael O'Grady, Allen Smoot, and Pro-Surgical Associates, LLC (PSA) filed this action against Defendants CONMED Corporation, Linvatec Corporation, and Rob Christensen in Superior Court in California.  On November 12, 2013, Defendants removed this action based on diversity of citizenship.  Defendants now move to dismiss based on improper venue or, in the alternative, to transfer the action to the Northern District of New York; Plaintiffs move to remand the action back to Superior Court.  The Court finds these motions suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b).  Having considered the papers submitted, the Court GRANTS Plaintiffs' motion to remand and DENIES AS MOOT Defendants' motion to dismiss or, in the alternative, to transfer venue.

FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiffs' complaint. See Docket No. 1, Ex. A.

CONMED is the parent corporation of Linvatec, a wholly-owned subsidiary through which CONMED manufactures medical and orthopedic products and accessories. Docket No. 1, Ex. C. CONMED and Linvatec are both foreign corporations doing business in California. Christensen is the Vice President of CONMED and resides in California.

Plaintiffs O'Grady and Smoot reside in California. O'Grady started working for CONMED in 1976, while Smoot began working with CONMED in or about 2005. Around 2005, CONMED required O'Grady to create a separate entity, PSA, and execute a Manufacturer's Representative Agreement (MRA) with Linvatec on a "take it or leave it basis." PSA is a California limited liability company located in Fremont. Both O'Grady and Smoot worked under the PSA entity. CONMED purported to establish a distributorship model, whereby it contracted with distributors such as PSA as independent contractors. In reality, CONMED acted as a franchisor by exerting substantial control over the distributors' operations and employees, even referring internally to the distributors as franchisees. CONMED allegedly categorized PSA as a contracted distributor in order to avoid paying employee-associated labor costs.

CONMED/Linvatec terminated the contract on December 31, 2012. Docket No. 1, Ex. D. Shortly before termination, Christensen approached several PSA representatives, who later began working for CONMED directly.

2

Plaintiffs filed their first action against CONMED and Linvatec regarding these events on August 30, 2013, in Alameda County Superior Court. See Case No. 13-CV-4453. Plaintiffs alleged that PSA employees were in fact employees of CONMED and Linvatec under California law. If they were not employees, Plaintiffs argue in the alternative that PSA was a franchise of CONMED and Linvatec because they exerted substantial control over PSA. Plaintiffs contend that Defendants violated their duties as either an employer or franchisor of PSA, asserting a number of common law and California statutory claims against Defendants. Additionally, Plaintiffs charge that the MRA was unenforceable because it was a contract of adhesion. On September 25, 2013, Defendants removed the first action on diversity grounds and then moved to dismiss, or in the alternative, to transfer the action. Plaintiffs did not oppose the motions, but instead voluntarily dismissed the action pursuant to Rule 41(a). See Case No. 13-CV-4453, Docket No. 15.

On October 16, 2013, Plaintiffs commenced a second action against Defendants, asserting a similar set of claims but adding three additional causes of action against Christensen: (21) interference with prospective economic advantage; (24) defamation per se; and (25) defamation per quod. All three of these causes of action arise from Plaintiffs' allegation that Christensen told a number of PSA sales representatives that Plaintiffs "had mismanaged the business as it related to open territory, thereby not distributing PSA sales representatives actual commissions or other monies earned." See, e.g., Complaint ¶ 208. Plaintiffs allege that Christensen knew his statements were false but made

3

them anyway with the intent to injure Plaintiffs' business. Id. ¶ 209. His discussions with various PSA sales representatives caused them to leave their employment with PSA. See generally Docket No. 30, Exs. 1, 2, 3.

On November 12, 2013, Defendants removed this action based on diversity of citizenship and moved to transfer the action to the Northern District of New York based on the forum selection clause in the MRA. Docket Nos. 1, 6.

## LEGAL STANDARDS

### I. Motion to remand

Title 28 U.S.C. § 1441(a) permits a defendant to remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Removal is therefore only appropriate if the state court action could have been filed in federal court in the first instance. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Upon notice of removal, the defendant bears the burden of establishing federal jurisdiction. Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988). The removal statute is strictly construed, with any uncertainty resolved in favor of remand. Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009).

### II. Motion to dismiss for improper venue

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss for improper venue based on a governing forum selection clause. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004). For purposes of such a motion, "the pleadings need not be accepted as true, and the court may consider

4

facts outside of the pleadings." Id.  However, the court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." Id. at 1138.

III. Motion to transfer

Title 28 U.S.C. § 1404(a) provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A district court has broad discretion to adjudicate motions for transfer on a case-by-case basis, considering factors of convenience and fairness. See Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 639 (9th Cir. 1988). Under § 1404(a), the district court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two fora, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).  In addition, "the presence of a forum selection clause is a 'significant factor' in the court's § 1404(a) analysis." Id. at 499.  However, the relevant public policy of the forum state, although not dispositive, "is at least as significant a factor in § 1404(a) balancing" as the presence of the forum selection

5

clause. Id. at 499, 499 n.21. The movant bears the burden of justifying the transfer by a strong showing of inconvenience. Decker Coal v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

DISCUSSION

The Court first considers Plaintiffs' motion to remand. Defendants removed this case on the basis of diversity jurisdiction. Federal courts have original jurisdiction over civil actions where the value of the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332. Section 1332 requires complete diversity: where a case involves multiple plaintiffs and defendants, no plaintiff may have the same citizenship as any defendant. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005). Because Plaintiffs are residents of California, and one Defendant, Christensen, is also a resident of California, Christensen's presence in the suit destroys complete diversity.

Defendants argue that diversity jurisdiction nevertheless exists because Christensen was fraudulently joined. "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." McCabe v. Gen. Foods, Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). A defendant is entitled to present facts that prove fraudulent joinder. Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). However, to show fraudulent joinder a defendant must establish that, "after all disputed questions of fact and all ambiguities in the controlling state law

6

are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." Nasrawi v. Buck Consultants, LLC, 776 F. Supp. 2d 1166, 1169-70 (E.D. Cal. 2011).  "Accordingly, a defendant seeking removal based on an alleged fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant," but must show that the plaintiff "would not be afforded leave to amend his complaint" to cure the deficiency.  Id. at 1170 (quoting Burris v. AT&T Wireless, Inc., 2006 WL 2038040, at *2 (N.D. Cal.)).  Unless a defendant demonstrates that a plaintiff cannot prevail on any of the claims asserted against the non-diverse defendant, remand must be granted.  Id.  The question before the Court, then, is whether Defendants demonstrate that Plaintiffs cannot recover against Christensen on any claim.

As a preliminary matter, there is an issue of which state's law applies.  Defendants argue that New York law governs Plaintiffs' claims against Christensen because of the MRA's forum selection clause:

> Any controversy arising under, or otherwise relating to, this Agreement shall be governed by, and construed exclusively in accordance with, the laws of the State of New York.  The federal or state courts in Oneida County, New York (including the United States District Court for the Northern District of New York, if and to the extent that it shall have subject matter jurisdiction over any claims) shall have exclusive jurisdiction in the event of any dispute arising under or related to the Agreement.

Docket No. 1, Ex. B.  It is ambiguous whether the language of this Agreement would apply to Christensen's independent, allegedly tortious actions.  Although the language of the forum selection

7

clause is broad, the contract governs the sales representative relationship between CONMED/Linvatec and PSA.  Even if the Court were to find that Christensen's individual tortious actions fall within the purview of this clause, Plaintiffs argue the forum selection clause is unenforceable because it contravenes the strong public policy of California.  See Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 325 (9th Cir. 1996).  Specifically, California has expressed a strong public policy of "protect[ing] California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California venue."  Jones, 211 F.3d at 498.  Plaintiffs' complaint, which lists a number of regulatory actions by Defendants, raises a non-fanciful possibility that PSA was a franchise under California law.  Viewed with all favorable inferences in favor of Plaintiffs, the forum selection clause would either not apply or would be unenforceable in light of public policy.

In any event, defamation in either California or New York requires generally similar elements: (1) publication of a statement, (2) which is false, (3) defamatory, (4) unprivileged, and (5) either has a natural tendency to injure or causes special damages.  See Sanders v. Walsh, 219 Cal. App. 4th 855, 862 (2013); Thompson v. Bosswick, 855 F. Supp. 2d 67, 76 (S.D.N.Y 2012). Regarding the last element, defamation in either state can be per se (arising from a list of categorically defamatory statements, such as charging an individual with a serious crime or injuring him in his business or trade) or per quod (requiring proof of special damages).  See id.; see also Cal. Civ. Code section 46; Smith v. Maldonado, 72 Cal. App. 4th 637, 647 (1999).

8

Defendants contend that the statement that Plaintiffs had "mismanaged the business as it related to open territory" was a protected opinion because it is not provably false. Plaintiffs respond that the statement that Plaintiffs had mismanaged their business, and had not paid their sales representatives actual commissions earned, is not an opinion but a statement that insinuates Plaintiffs acted illegally. Defendants also find fault in the way Plaintiffs plead their defamation claims, such as that Plaintiffs did not "allege the time when, place where, and manner in which the false statement was made, and specify to whom it was made." Epifani v. Johnson, 65 A.D.3d 224, 233 (2009). Both sides additionally present declarations contesting whether Christensen made these statements or not. See, e.g., Docket No. 30, Ex. 2 ¶¶ 7-8 and Docket No. 29, Ex. 2 ¶ 6.

The alleged deficiencies raised by Defendants only serve to point out ways in which Plaintiffs could improve their complaint. At the complaint's core, however, nothing prevents Plaintiffs from prevailing against Christensen on these claims. A statement that Plaintiffs mismanaged their business by wrongfully withholding commissions is provably false because Plaintiffs could show that they never did so. Such a statement would appear to be injurious to Plaintiffs' business because it accuses them of incompetence or, at worse, engaging in illegal activity. Although Christensen has filed a declaration denying he made these statements, at least one PSA representative has stated that Christensen did make a similar statement and also offered an employment contract with CONMED directly. Docket No. 30, Ex. 2. In sum, if Plaintiffs clarify their complaint with details of how the statement was

9

made, then they may have defamation claims against Christensen. For the deficiencies Defendants have pointed out, a court would allow Plaintiffs leave to amend.

Further, Defendants have not addressed Plaintiffs' claim against Christensen for interference with contractual advantage. If that claim survives but the defamation claims fail, Plaintiffs will still have at least one valid claim to join Christensen, and there would be no diversity. See Nasrawi, 776 F. Supp. 2d at 1169-70. Where Defendants have not shown why all of Plaintiffs' claims against Christensen were fraudulent, the Court is hard-pressed to declare them fraudulent on its own accord.

The only defense raised by Defendants that could eliminate all of Plaintiffs' claims against Christensen is one arising from agency principles. Defendants contend that the manager's privilege shields Christensen's activities from liability because the complaint never alleges that Christensen acted outside the scope of his agency for CONMED.

Generally, an agent is liable for his own tortious actions, even if committed by him pursuant to his agency. Restatement (Second) of Agency § 343 (1958) (generally, an agent "who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal"); Kurtin v. Elieff, 215 Cal. App. 4th 455, 480 (2013) (citing Cal. Civ. Code § 2343) ("agents are responsible for their own independent torts and breaches of contract in connection with acts in the course of their agency"). However, the manager's privilege protects a company's manager from liability to a third party for advising or inducing his company to breach its contract

10

with the third party. Klein v. Oakland Raiders, Ltd., 211 Cal. App. 3d 67, 80 (1989); Los Angeles Airways, Inc. v. Davis, 687 F.2d 321, 326 (9th Cir. 1982). This privilege is designed to protect a manager's ability to advise his principal without fear of individual liability. Klein, 211 Cal. App. 3d at 80. The rationale of this privilege is heavily based on preserving a fiduciary relationship. Id. The privilege may be lost if the manager acts with improper intent. Id. The managerial privilege does not apply where the manager interferes with contracts to which the employer is not a party, "[e]ven where the employee acts on behalf of his employer." Id. at 81 (holding that managerial privilege does not apply where manager individually induced breach of relationship between two outside parties, neither of which was the manager's principal). Cf. McCabe, 811 F.2d at 1339 (managers were protected from liability for terminating employer principal's contractual relationships with employee); Los Angeles Airways, Inc, 687 F.2d at 328 (manager could not be liable to third party for inducing his company to breach its contract with a third party).

Here, Christensen did not allegedly induce CONMED to breach its contract with a third party. He is alleged to have acted, as an agent of CONMED, to interfere with the existing contract between PSA and its sales representatives. Christensen was not advising or acting on behalf of his employer regarding his employer's own contracts, but interfering with contracts to which his employer was not a party. "It is one thing for an employee to deal with his employer's contracts but quite another for him to reach out and meddle with contracts to which his employer has no

11

rightful interest." Klein, 211 Cal. App. 3d at 81 (quoting Gamer, "The Agent's Privilege to Interfere Intentionally with Contractual Relations: A Reappraisal of California Law," 12 Cal. Western L. Rev. 475, 484 (1976)). Accordingly, the managerial privilege does not apply.

Because Defendants have not satisfied their heavy burden of proving that joinder of Christensen was fraudulent and as a result that removal was appropriate, the Court must remand the case to state court.

## CONCLUSION

The Court GRANTS Plaintiffs' motion to remand and DENIES Defendants' motion to dismiss or, in the alternative, to transfer venue, as MOOT.

IT IS SO ORDERED.

Dated: 2/26/2014

CLAUDIA WILKEN
United States District Judge